COMMONWEALTH vs. MICHAEL J. MAXIM
(and a companion case[1]).

Barnstable. January 4, 1999. - April 7, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Municipal Corporations,* Regulations, By-laws and ordinances, Shellfish. *Shellfish. Statute,* Construction.

General Laws c. 130, § 52, authorizing municipalities to regulate the taking of eels, shellfish, and sea worms, does not authorize municipalities to prohibit or abrogate the right, recognized by the Commonwealth, of native Americans to take shellfish, and such regulations adopted by a municipality, including criminal penalties, are not applicable to native Americans taking shellfish for apparent sustenance. [288-292]

COMPLAINTS received and sworn to in the Barnstable Division of the District Court Department on February 9, 1996.

The cases were heard by *George H. Lebherz, Jr.,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Michael D. O'Keefe,* Assistant District Attorney (*Julia K. Holler,* Assistant District Attorney, with him) for the Commonwealth.

*Peter P. d'Errico,* of New Mexico, for the defendants.

*Scott Harshbarger,* Attorney General, & *Siu Tip Lam,* Assistant Attorney General, for the Attorney General, amicus curiae, submitted a brief.

LYNCH, J. The defendants are members of the Mashpee Wampanoag[2] tribe. They were convicted in the District Court of taking soft-shell clams in violation of the shellfish regulations of the town of Bourne (town). After a timely appeal, the Appeals Court reversed and entered judgments for the defendants.

[1]Commonwealth vs. David S. Greene.

[2]It is unclear from the record whether the defendants' tribe is called the Wampanoag, the Mashpee, or the Mashpee Wampanoag. For purposes of this decision, the distinction is immaterial.

45 Mass. App. Ct. 49 (1998). We granted the Commonwealth's application for further appellate review, and reverse the judgment of the District Court, but for slightly different reasons from those given by the Appeals Court.

The District Court judge found that, on Wednesday, July 5, 1995, the defendants were on a town beach collecting clams for personal consumption. The defendants were cited for taking shellfish without a permit[3] and for taking soft-shell clams on a day prohibited by local regulations for recreational shellfishing. The parties agree, and the judge found, that the defendants enjoy tribal status as Wampanoag Indians.

The judge ruled that the defendants violated § II 2.2 of the Bourne shellfish regulations.[4] The defendants maintain, inter alia, that this regulation cannot be lawfully applied to them in

---

[3]This charge was not pursued by the Commonwealth.

[4]The regulations provide:

"SECTION I
"GENERAL REGULATIONS

"1.1 Under the provisions of the above-mentioned laws all persons are prohibited from taking eels, herring, clams, quahogs, oysters, scallops or seaworms from the coastal waters or flats of the Town without a current permit issued by the Board of Selectmen of the Town of Bourne. The taking of eels, clams, quahogs, oysters, herring, scallops or seaworms shall be limited to the regulations set forth herein. [Fine $50.00] *Recreational and Commercial Permits shall expire on March 31 in each year.*

"TYPES OF PERMITS AND FEES

"1.2 No more than one (1) recreational permit will be issued per family (a 'family' is a person or a group of persons, whether or not related by blood or marriage, residing under the same roof in a dwelling unit.) The use of this permit is limited to the person to whom the permit was issued or any member of the family as defined herein. An application form may be required to be completed and approved prior to issuance of permits. . . .

"1.3 COMMERCIAL PERMITS: Commercial shell fishing permits may be sold to individuals who demonstrate to the satisfaction of the licensing authorities that the Town of Bourne or Sandwich is their permanent place of domicile. Commercial shell fishing permits shall be valid only for the period of time that the holder maintains a permanent place of domicile in either the Town of Bourne or Sandwich. An application form may be required to be completed and approved prior to issuance of permits. Tenants upon applying or renewing a Commercial permit must submit a current notarized lease. The Department of Natural

this instance because they were exercising their aboriginal rights to fish.

The defendants cite a long history evidencing legislative and executive recognition of their aboriginal right to shellfish for sustenance. See, e.g., St. 1795, c. 71, § 5 ("Provided that nothing in this act shall extend to deprive any native Indians of the privilege of digging shell fish for their own consumption . . ."), repealed and codified at Rev. St. (1836), c. 55, § 15; St. 1933, c. 329, § 50 ("any native Indian without a permit, may . . . take for his own family use, from the waters of any city or town, eels, soft-shelled clams"); Executive Order No. 126 (July 8, 1976) (noting that Commonwealth has, for over three centuries, maintained an unceasing "special relationship with the Native American people of the region," and ordering that "State agencies shall deal directly with" appropriate tribal council on matters affecting the Mashpee, Gay Head Wampanoag and other Wampanoag, and Nipmuc Indians); 1982 House Resolutions recognizing and protecting the ancient and aboriginal claim of the Indians of the Commonwealth (adopted November 9, 1982) (recognizing aboriginal claims of Indians within Commonwealth to hunt and to fish for sustenance).

Resources must be notified of any change in address immediately. Commercial permits shall only be issued during the months of January, February, and March, except for the Commercial Scallop Permit. Commercial permits are valid from April 1st of one year to March 31st of the following year. Also, each boat owner will be required to submit a current boat registration upon applying for a permit. . . ."

"SECTION II
"RECREATIONAL PERMIT REGULATIONS
"(General Regs., Sec. I also apply)

"2.1 Shellfish taken by the use of this permit are not to be sold. [Fine: $50.00]

"AUTHORIZED HARVEST SEASON/DAYS/LIMITS:

"2.2 *Summer Season* — (June thru September):
Sundays — total limit — 1 peck of quahogs
Wednesdays — total limit — 1 peck of quahogs
Saturdays — total limit — 1 peck of quahogs or clams
(may mix but total catch not to exceed 1 peck)
*NOTE*: '*Total Weekly Limit*' not to exceed 1 *level* peck per species —
Sunday thru Saturday. [Fine: $25.00/$50.00]"

(Emphasis in original).

The governing statute, G. L. c. 130, § 52, provides in relevant part:

> "The selectmen of a town bordering upon coastal waters, if so authorized by their town, and the board of aldermen or the city council of any city so situated may control, regulate or prohibit the taking of eels and any or all kinds of shellfish and sea worms within such cities and towns and may, from time to time, without other or special authority therefor, make any regulations *not contrary to law* in regard to said fisheries as they deem expedient, including the times, places, methods, purposes, uses, sizes, quantities and any other particulars of such taking, and may grant permits, and establish the fees therefor . . ." (emphasis added).

Therefore, the statute does not permit towns to prohibit shellfishing authorized by the Commonwealth.

Whether aboriginal rights exist is a factual matter. *United States* v. *Santa Fe Pac. R.R.*, 314 U.S. 339, 345 (1941). We note parenthetically that the Attorney General's amicus brief contends that the "District Court did not make a factual finding that the Defendants were descendants of the original Mashpee Wampanoag Native Americans or that the Wampanoag Native Americans had exercised exclusively and continuously their aboriginal fishing rights at the places in question since time immemorial." But the judge did expressly find that the defendants had tribal status and that "the Mashpee Indians have never given up their usufruct rights to fish and have continued to exercise those rights as did their forefathers, since time immemorial." Furthermore, he ruled that Indians are not subject to shellfishing license requirements, and that the Commonwealth has traditionally acknowledged and continues to acknowledge the usufruct[5] rights of the American Indian.

The Commonwealth conceded at trial that aboriginal rights have long been recognized in the Commonwealth, and at least until 1941, such rights were explicitly acknowledged by statute. See, e.g., St. 1933, c. 329, § 50; Rev. St. (1836), c. 55, § 15. In

---

[5]Although the District Court judge refers interchangeably to "aboriginal rights" and "usufruct rights" it appears the two are distinct as the latter refers to rights arising under treaty. See *Lac Courte Oreilles Band of Lake Superior Chippewa Indians* v. *Voight*, 700 F.2d 341, 351-352 (7th Cir. 1983).

1941 the provision exempting native Indians from the shellfish regulations was omitted from the statute. St. 1941 c. 598, § 1.

It is doubtful, however, by the omission, that the Legislature intended to modify or to revoke aboriginal rights recognized in the Commonwealth for hundreds of years. Cf. *United States* v. *Santa Fe Pac. R.R.*, *supra* at 354 ("an extinguishment [of aboriginal title] cannot be lightly implied in view of the avowed solicitude of the Federal government for the welfare of its Indian wards"). This is particularly so where there is subsequent executive and legislative action that indicates that such omission was never intended. See *Confederated Tribes of Chehalis Indian Reservation* v. *State*, 96 F.3d 334, 340 (9th Cir. 1996) ("Courts have uniformly held that treaties, statutes and executive orders must be liberally construed in favor of establishing Indian rights . . . . Any ambiguities in construction must be resolved in favor of the Indians." [Citations omitted]). Furthermore, as the Appeals Court correctly noted, the record in this case demonstrates "a long history of recognition of the fishing rights of native Americans by the Commonwealth and a lack of showing that the Commonwealth intended to authorize the town to restrict such rights." *Commonwealth* v. *Maxim*, 45 Mass. App. Ct. 49, 52 (1998).

From this discussion certain facts emerge:

(1) The town regulation in question specifically applies to recreational and commercial shellfishing. There is no definition of recreational shellfishing contained in the regulation and a strong argument can be made that the defendants were engaged in sustenance rather than recreational shellfishing.

(2) The regulation purports to govern the taking of shellfish by those holding permits granted under its provisions. The judge ruled that the defendants are not subject to fishing license requirements.

(3) A long history exists in the Commonwealth protecting Indian fishing rights; that raises a serious question whether G. L. c. 130, § 52, which authorizes the enactment of local shellfish regulations, applies to or abrogates in any way the defendants' aboriginal rights.

We therefore conclude that, whatever may be the defendants' rights under Federal or Commonwealth treaties, and regardless whether their rights are aboriginal or usufructuary, the regulation cannot be said unambiguously to apply to the defendants. Because it is a basic principle of our criminal law that ambiguities and doubts are to be resolved in favor of a

defendant, *Commonwealth* v. *Hrycenko*, 417 Mass. 309, 317 (1994), the regulation cannot be applied against the defendants in these circumstances. "It is a central tenet of our constitutional law that, as a matter of due process, a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden should be deemed void for vagueness." *Commonwealth* v. *Kwiatkowski*, 418 Mass. 543, 547 (1994), quoting *Opinion of the Justices*, 378 Mass. 822, 826 (1979). See *Commonwealth* v. *Williams*, 395 Mass. 302, 304 (1985). As these cases involve a criminal charge, "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Commonwealth* v. *Maxim*, *supra* at 50, quoting *Rewis* v. *United States*, 401 U.S. 808, 812 (1971).

Because we conclude that the defendants prevail on other grounds, we decline to address the defendants' alternative argument that they enjoy protection from the regulation under two prerevolutionary treaties. It is also unnecessary to discuss the Commonwealth's claim that the regulation may be enforced as a conservation measure.[6]

The judgments are reversed, the findings are set aside, and judgments shall enter for the defendants.

*So ordered.*

---

[6]We note that the record is devoid of evidence that the regulation was adopted as a conservation measure (apart from the self-serving complaint of a commercial shell fisherman to police). Moreover, the disparate treatment of commercial and recreational permittees raises serious doubts as to the efficacy of this claim.