JOHN DOE, SEX OFFENDER REGISTRY BOARD No. 151564 *vs.*
SEX OFFENDER REGISTRY BOARD.

Suffolk. January 4, 2010. - May 3, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Sex Offender. Sex Offender Registration and Community Notification Act.
Administrative Law, Regulations. Regulation. Evidence, Sex offender, Expert
opinion. Witness, Expert. Words, "Like violation."*

This court concluded that the "like violation" requirement of the sex offender
registration statute, G. L. c. 6, § 178C, which provides that a person con-
victed of any violation of Massachusetts law enumerated as a sex offense
in the sex offender registry law, as well as any "like violation" of the laws
of another jurisdiction, must register as a sex offender, is satisfied where it
is shown that the proof necessary for the out-of-State conviction would
also warrant a conviction of the Massachusetts offense for which registra-
tion is required. [615-616]

In a Superior Court action brought by a plaintiff seeking review of a decision
of the Sex Offender Registry Board (board) requiring him to register as a
sex offender based on an offense to which he had pleaded guilty in Maine,
the judge erred in granting the plaintiff's motion for judgment on the
pleadings on the ground that the Maine offense was not a "like violation,"
for purposes of the sex offender registration statute, to Massachusetts's
prohibition on indecent assault and battery on a child under fourteen years
of age, G. L. c. 265, § 13B, where an individual convicted under the
Maine statute who committed the same act in Massachusetts could be
convicted under the Massachusetts statute and thereafter would be subject
to the requirement of sex offender registration in the Commonwealth
[616-618]; however, there was no merit to the board's contention that it
could examine the facts underlying a conviction in order to determine
whether a "like violation" occurred, even though the board was permitted
to consider such facts when determining an offender's level of dangerous-
ness [618-619].

In a Superior Court action brought by a plaintiff seeking review of a decision
of the Sex Offender Registry Board (board) requiring him to register as a
sex offender, the plaintiff, who claimed that the board's regulations setting
forth the risk factors used to classify sex offenders were out of date and
therefore invalid, failed to present specific research demonstrating that any
particular factor currently included in the regulations is now considered
unreliable within the scientific community [619-621]; however, where the
board erred in classifying the sixty-one year old plaintiff without consider-
ing the substantial evidence presented at the hearing concerning the effect
of age on recidivism, this court remanded the matter for new classification
proceedings [621-623].

In classification proceedings before the Sex Offender Registry Board (board), the board erred in concluding that the plaintiff, an indigent, was not entitled to receive funds for an expert because the board did not intend to rely on expert testimony [623-624]; in drawing a negative inference from the fact that the plaintiff did not undergo sex offender treatment where such treatment was neither available nor required during the plaintiff's incarceration, parole, or probation [624-625]; and, when concluding that the plaintiff denied responsibility for his offense, in entirely ignoring the undisputed fact that the plaintiff had pleaded guilty to the offense [625-626].

CIVIL ACTION commenced in the Superior Court Department on June 1, 2007.

The case was heard by *John C. Cratsley*, J., on motions for judgment on the pleadings, and a motion for reconsideration was considered by him.

The Supreme Judicial Court granted an application for direct appellate review.

*Jennifer K. Zalnasky* (*Beatriz E. Van Meek*, Special Assistant Attorney General, with her) for the defendant.

*Andrew S. Crouch* for the plaintiff.

COWIN, J. After the Sex Offender Registry Board (board) classified John Doe as a level three sex offender, a judge in the Superior Court ruled that Doe is not required to register as a sex offender because his conviction in Maine of unlawful sexual contact, see Me. Rev. Stat. Ann. tit. 17-A, § 255(1)(C) (West Supp. 2000),[1] is not a "like violation" similar to any Massachusetts statute that requires such registration in the event of a conviction. See G. L. c. 6, §§ 178C-178P. We reverse the ruling because we conclude that Maine's offense of unlawful sexual conduct is a "like violation" when compared to the Massachusetts crime of indecent assault and battery on a child under fourteen. See G. L. c. 265, § 13B. Nonetheless, because of errors in the board's decision we remand the case to the board for new classification proceedings and for a determination whether Doe is entitled to funds for an expert.

---

[1] At the time of Doe's conviction, the crime of unlawful sexual conduct was codified at Me. Rev. Stat. Ann. tit. 17-A, § 255(1)(C) (West Supp. 2000). After an amendment to the Maine statute, the offense is now codified at Me. Rev. Stat. Ann. tit. 17-A, § 255-A(1)(E) (West 2006 and Supp. 2009). See Me. St. 2001, c. 383, § 23. We refer to the statute as it was codified at the time of Doe's conviction.

1. *Factual background and procedural history.* We summarize the facts found by a hearing examiner after an evidentiary hearing, supplemented by undisputed facts from the record. In 2001, Doe pleaded guilty in Maine to one count of unlawful sexual conduct in violation of Me. Rev. Stat. Ann. tit. 17-A, § 255(1)(C). He was sentenced to a term of three years in prison, of which all but six months was suspended, followed by three years of probation.[2] In 2006, after he was released from prison, Doe moved to Massachusetts.[3]

On learning of Doe's residence in the Commonwealth, the board notified him that he was required to register as a sex offender in Massachusetts. In a preliminary determination, see 803 Code Mass. Regs. § 1.06 (2004), the board decided that Doe must register as a sex offender and classified him as a level three offender. See G. L. c. 6, § 178K (2) (*c*). Following Doe's appeal and an evidentiary hearing before a hearing examiner, see G. L. c. 6, § 178L (1) (*a*), the board upheld the preliminary classification.

Doe sought judicial review of the board's decision in the Superior Court, see G. L. c. 6, § 178M, arguing, inter alia, that the board lacked jurisdiction over him because the offense to which he pleaded guilty in Maine is not a "like offense" to any of the Massachusetts offenses that require registration as a sex offender. See G. L. c. 6, §§ 178C-178P. A Superior Court judge agreed with Doe, allowed his motion for judgment on the pleadings, reversed the decision of the board, and declared that Doe need not register as a sex offender in Massachusetts. The board appealed, and we granted Doe's motion for direct appellate review.

2. *Standard of review.* Pursuant to G. L. c. 6, § 178M, an offender may seek judicial review of the board's final classification and registration requirements in accordance with the Administrative Procedure Act. See G. L. c. 30A, § 14. We reverse the board's decision if it was "(*a*) [i]n violation of constitutional provisions"; "(*b*) [i]n excess of the statutory authority

---

[2]The hearing examiner found erroneously that Doe was sentenced to serve two years of probation following his release.

[3]In 2002, a Maine court issued a probation revocation warrant because Doe had left the State. He was arrested in 2005, and in 2006, he was ordered to serve fourteen months of the suspended portion of his sentence.

or jurisdiction" of the board; "(*c*) [b]ased upon an error of law"; "(*d*) [m]ade upon unlawful procedure"; "(*e*) [u]nsupported by substantial evidence"; "(*f*) [u]nwarranted by facts found by the court . . . where the court is constitutionally required to make independent findings of fact"; or "(*g*) [a]rbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law." See G. L. c. 30A, § 14 (7). In conducting our review, we "give due weight to the experience, technical competence, and specialized knowledge" of the board. *Id.*

3. *Whether Doe is a sex offender subject to the board's jurisdiction.* A sex offender is defined as a person who has been convicted of any violation of Massachusetts law enumerated as a sex offense in the sex offender registry law, as well as any "like violation of the laws of another [jurisdiction]." G. L. c. 6, § 178C. Any sex offender moving into the Commonwealth from another state must register with the board within two days. See G. L. c. 6, § 178E (*g*).

a. *Definition of "like violation."* The board argues that the motion judge erred in determining that Doe's Maine conviction does not constitute a "like violation" within the meaning of G. L. c. 6, § 178C. The sex offender registration statute does not define the term "like violation," nor have we previously interpreted the "like violation" provision. In *Commonwealth* v. *Becker*, 71 Mass. App. Ct. 81, 82, cert. denied, 129 S. Ct. 320 (2008), the Appeals Court addressed whether a conviction of the New York offense of sexual abuse in the third degree is a "like violation" similar to the Massachusetts offense of indecent assault and battery on a person fourteen or older. See G. L. c. 265, § 13H. The court defined a "like violation" as a crime that is "the same or nearly the same" as a Massachusetts offense requiring registration. *Id.* at 87, quoting *Commonwealth* v. *Smith*, 58 Mass. App. Ct. 166, 172 (2003), rev'd on other grounds, 543 U.S. 462 (2005). In applying this definition, the court compared the definition of the New York offense with the definition of the Massachusetts offense and concluded that the essence of the two crimes was the same. *Commonwealth* v. *Becker, supra.*

The Appeals Court analysis was correct. A "like violation" is a conviction in another jurisdiction of an offense of which the elements are the same or nearly the same as an offense requiring registration in Massachusetts. The elements of the offense in

another jurisdiction need not be precisely the same as the elements of a Massachusetts sex offense in order for it to constitute a "like violation." In drafting the statute, the Legislature chose the word "like" rather than the word "identical" to describe the required relationship between an offense from another jurisdiction and a Massachusetts sex offense. Where a statute does not define a term, we interpret it "in accordance with its generally accepted plain meaning." *Commonwealth* v. *Boucher*, 438 Mass. 274, 276 (2002). Therefore, we consider the "like violation" requirement satisfied where it is shown that the proof necessary for the out-of-State conviction would also warrant a conviction of a Massachusetts offense for which registration is required.

b. *Doe's Maine conviction of unlawful sexual contact.* General Laws c. 265, § 13B, prohibits "indecent assault and battery on a child under the age of fourteen." Any intentional touching that is "harmful or offensive" and "committed without justification or excuse" constitutes battery, see Massachusetts Superior Court Criminal Practice Jury Instructions § 2.21.1 (Mass. Cont. Legal Educ. 1st Supp. 2003), and all battery includes assault. See *Commonwealth* v. *Burke*, 390 Mass. 480, 482 (1983). An assault and battery is indecent if it is "fundamentally offensive to contemporary standards of decency and moral values." See *Commonwealth* v. *Trowbridge*, 419 Mass. 750, 757-758 (1995). See also *Commonwealth* v. *Miozza*, 67 Mass. App. Ct. 567, 570-571 (2006). The intentional, unjustified touching of the breasts, abdomen, buttocks, thighs, or pubic area of a female constitutes indecent assault and battery. *Id.* at 571. Accordingly, the elements of the Massachusetts crime of indecent assault and battery on a child under fourteen are an intentional touching (1) that is harmful or offensive and committed without justification or excuse; (2) that is indecent (i.e., that offends contemporary standards of decency and moral values); and (3) that is committed on a child under the age of fourteen. See G. L. c. 265, § 13B; *Commonwealth* v. *Trowbridge, supra*; *Commonwealth* v. *Boyd*, 73 Mass. App. Ct. 190, 194 (2008).

Maine's unlawful sexual contact statute prohibits "intentional[] . . . sexual contact" with "[an]other person, not the actor's spouse, [who] has not in fact attained the age of 14 years" when the actor is "at least 3 years older" than the victim. Me. Rev. Stat. Ann. tit. 17-A, § 255(1)(C). Sexual contact is defined

as "any touching of the genitals or anus . . . for the purpose of arousing or gratifying sexual desire or for the purpose of causing bodily injury or offensive physical contact." Me. Rev. Stat. Ann. tit. 17-A, § 251(1)(D) (West Supp. 2000). Thus, the elements of Maine's offense of unlawful sexual contact are an intentional touching (1) for the purpose of arousing or gratifying sexual desire or for the purpose of causing bodily injury or offensive physical contact; (2) of the genitals or anus; (3) of a person under the age of fourteen; (4) by a person at least three years older than the victim and not the victim's spouse.

The Superior Court judge decided that Doe's Maine conviction was not a "like violation" because the judge believed that the Massachusetts offense includes elements that are not required to prove the Maine offense. The judge concluded, in our view erroneously, that the Massachusetts statute requires that the Commonwealth prove two elements not required by the Maine statute: (1) that both an assault and a battery occurred, whereas in Maine the statute requires only the element of assault; and (2) the additional element that the crime was offensive to contemporary moral values.

We read the Maine statute as requiring proof of both an assault and a battery because it prohibits intentional touching. Me. Rev. Stat. Ann. tit. 17-A, § 255(1). The elements of the Maine offense of unlawful sexual contact and the Massachusetts offense of indecent assault and battery on a child under fourteen are essentially the same. Both crimes require that the touching be intentional and that the victim be under the age of fourteen. The two statutes differ only in the character of the prohibited touching. Massachusetts prohibits indecent touching (defined as any touching offensive to contemporary moral values) whereas Maine prohibits sexual contact (defined as the touching of the genitals or anus for the purpose of sexual gratification or arousal, causing bodily injury, or causing offensive bodily contact). However, these differing statutory formulations prohibit essentially the same conduct. The intentional, unjustified touching of the genitals or anus is considered indecent under Massachusetts law, regardless of the actor's purpose. *Commonwealth* v. *Miozza, supra* at 571. Thus, any act that qualifies as sexual conduct under the Maine statute would qualify as indecent under the Massachusetts statute.

Admittedly, there are some differences between the two statutes. For example, it is possible that a person could engage in touching for an alternative purpose not listed in the Maine statute that would nonetheless qualify as indecent under Massachusetts law. Additionally, the Maine statute requires that the offender be at least three years older than the victim and not be married to the victim. We conclude that these slight differences in the elements of the crimes do not render the statutes dissimilar for the purposes of the "like violation" provision. As noted, the statutes need only be alike, not identical. Furthermore, where the elements differ, the Massachusetts statute prohibits more conduct than the Maine statute. An individual convicted under the Maine statute who committed the same act in Massachusetts could be convicted under the Massachusetts statute and thereafter would be subject to the requirement of sex offender registration in the Commonwealth.

c. *Consideration of underlying conduct.* The board contends also that, in some circumstances, it may look beyond the elements of the out-of-State offense and consider the facts underlying the conviction to determine whether the offense constitutes a "like violation." Doe argues that the board may not examine the facts underlying a conviction in order to determine whether a "like violation" occurred. We conclude that the board may not consider the facts underlying a conviction in making this determination.

Although the registration statute is not a criminal statute, see *Doe, Sex Offender Registry Bd. No. 8725* v. *Sex Offender Registry Bd.,* 450 Mass. 780, 787-788 (2008), criminal penalties are authorized for sex offenders who fail to register within two days of moving to the Commonwealth. See G. L. c. 6, §§ 178E (*g*), 178H (*a*). Thus, it is essential to provide notice and clarity about whether registration is required. See *Commonwealth* v. *Maxim,* 429 Mass. 287, 292 (1999). See also *Commonwealth* v. *Becker,* 71 Mass. App. Ct. 81, 94-95 (Cohen, J., concurring), cert. denied, 129 S. Ct. 320 (2008). Because of the criminal penalties for failing to register, we apply the "rule of lenity" and resolve any ambiguities in the "like violation" provision against the board. See *Commonwealth* v. *Wotan,* 422 Mass. 740, 742-743 (1996).

The sex offender registry law requires registration for an enumerated set of offenses related to sexual conduct. See G. L.

c. 6, § 178C. Because the registration requirement is defined in terms of offenses, the determination whether an offense from another jurisdiction is a "like violation" is defined also in terms of offenses and not conduct. The board cannot transform a crime that does not involve sexual conduct into a registerable offense by examining the acts underlying the conviction. It is not sufficient that the offender may have engaged in behavior that falls within one of the crimes listed in the registration statute, but was then convicted of a nonsexual crime. The offender must be convicted of a crime of which the elements are the same or nearly the same as one of the listed Massachusetts offenses.

Moreover, allowing the board to consider the acts underlying the conviction would be contrary to the obvious intent of the Legislature to treat sex offenses in the same manner regardless of where the offenses were committed. Furthermore, the defendant in the other State would not have notice that, by pleading guilty to a crime that does not require proof of sexual conduct, he or she would be required to register as a sex offender upon establishing residency in Massachusetts.[4] Permitting an inquiry into the facts supporting a conviction in another jurisdiction could expand the registration requirement to include crimes beyond those that explicitly encompass sexual conduct.

The board argues that, in order to properly classify sex offenders, it must be permitted to consider the conduct forming the basis for convictions in other States. This argument is unavailing. Our holding today does not alter the evidence the board may consider when determining an offender's level of dangerousness. The board is permitted to consider the underlying facts of the prior conviction. See G. L. c. 6, § 178K (1) (*b*) (iii).

4. *Validity of the regulations.* Doe claims that the board's regulations setting forth the risk factors used to classify sex offenders are invalid because they have not been updated since

---

[4]For example, pursuant to a plea agreement, a defendant charged with indecent assault and battery might plead guilty to simple assault and battery. Under Massachusetts law, this individual would not be required to register as a sex offender, even if his or her conduct would also have supported a conviction of indecent assault and battery. If the Sex Offender Registry Board (board) could consider underlying conduct, the board could require a defendant who accepted the same plea bargain in another jurisdiction to register as a sex offender because the facts underlying the crime would support a conviction of indecent assault and battery.

2002. Doe contends separately that the board's classification in his case is fatally flawed because the regulations contain no risk factor regarding age, notwithstanding that recent scientific research shows that the risk of sexual offense recidivism decreases as offenders grow older.

A plaintiff challenging the validity of regulations promulgated by an agency pursuant to its statutory authority faces a heavy burden to establish that those regulations are invalid. See *Dowell* v. *Commissioner of Transitional Assistance*, 424 Mass. 610, 612 (1997). An agency has "a wide range of discretion in establishing the parameters of its authority pursuant to the enabling legislation." *Moot* v. *Department of Envtl. Protection*, 448 Mass. 340, 346 (2007), quoting *Levy* v. *Board of Registration & Discipline in Med.*, 378 Mass. 519, 525 (1979). Regulations promulgated by an agency are valid unless they " 'conflict with the statutes' . . . under which the agency operates." *Duarte* v. *Commissioner of Revenue*, 451 Mass. 399, 411 (2008), quoting *Telles* v. *Commissioner of Ins.*, 410 Mass. 560, 564 (1991).

The sex offender registry law requires the board to "promulgate guidelines for determining the level of risk of reoffense and the degree of dangerousness posed to the public" by sex offenders. See G. L. c. 6, § 178K (1). The statute sets forth, in detail, risk factors that the board must take into account in assessing an offender's dangerousness. See G. L. c. 6, § 178K (1) (*a*)-(*l*). The board has incorporated these and other risk factors in its regulations. See 803 Code Mass. Regs. § 1.40(1)-(24) (2002). The regulations state that they are based on the "available literature" regarding the risk factors enumerated in the statute, and in numerous instances, they cite specific scientific studies supporting the use of individual risk factors. See, e.g., 803 Code Mass. Regs. § 1.40(7) (citing Hanson, Predicting Relapse: A Meta-Analysis of Sexual Offender Recidivism Studies, 66 J. Consulting & Clinical Psychol. 348 [1998]). They rely particularly on the work of several leading researchers in the field of sex offender recidivism. See *Commonwealth* v. *Powell*, 450 Mass. 229, 238 (2007) (general acceptance of theory in relevant scientific community is indicative of reliability).

Although the board has not updated its regulations since 2002, see 803 Code Mass. Regs. § 1.40, that fact by itself is of little significance. Doe has presented no specific research

demonstrating that any particular factor currently included in the regulations is now considered unreliable within the scientific community. Doe does not suggest that any more recent research has established that any of the included risk factors are no longer relevant or reliable to a determination of the risk of re-offense. Nor, except as to the issue of age discussed below, does he point to any factor that he argues should be added.

We conclude, however, that the board erred in reaching a classification determination in this case without having considered the effect of Doe's age on his dangerousness and likelihood to reoffend. Doe was sixty-one at the time of the hearing. He presented evidence of numerous scientific and statistical studies, published during the last decade, that conclude that age is an important factor in determining the risk of recidivism and that such risk diminishes significantly as an offender ages.[5] See, e.g., Public Safety and Emergency Preparedness Canada, Validity of Static-99 With Older Sexual Offenders, at 11-12 (2005) (finding that recidivism rate is lower for sex offenders who are older at the time of release); United States Department of Justice, Bureau of Justice Statistics, Recidivism of Sex Offenders Released From Prison in 1994, at 25 (2003) (sex offenders age forty-five and older rearrested for sex crimes at lower rate than younger offenders); Saari, Actuarial Risk Assessment With Elderly Sex Offenders: Should It Be Abandoned? Sex Offender L. Rep. 68, 75 (2002) (concluding that there is statistically significant support for proposition that older sex offenders recidivate at lower rates than other sex offenders). The authors of these studies, which were submitted by Doe to the hearing

---

[5]Although the regulations were last updated in 2002, most of the research on which they rely was published in the late 1990s. The state of scientific understanding in the later part of the 1990s indicated that there was some correlation between age at release and the risk of recidivism, but that this correlation varied significantly between samples. See Thornton, Age and Sexual Recidivism: A Variable Connection, 18 Sexual Abuse: A Journal of Research and Treatment, at 123 (2006). However, as indicated in studies submitted by Doe, "[k]nowledge concerning sexual offender recidivism risk has advanced considerably during the past [ten] years." Public Safety and Emergency Preparedness Canada, Predictors of Sexual Recidivism: An Updated Meta-Analysis, at 1 (2004). By 2004, researchers had concluded that age had a substantial association with recidivism and that offenders over the age of fifty at release reoffended at half the rate of younger offenders. Public Safety and Emergency Preparedness Canada, Sex Offender Recidivism: A Simple Question, at 7 (2004).

examiner, include many of the same researchers on whom the board relied in developing the current regulations. See 803 Code Mass. Regs. § 1.40.

In addition, Doe argued before the hearing examiner and in his briefs that this research has shown that the risk of recidivism is significantly lower for offenders age sixty and over than for offenders younger than sixty. See Validity of Static-99 With Older Sexual Offenders, *supra* at 10 ("The average recidivism rates steadily declined from 14.8% in the offenders less than 40, to 8.8% for the offenders in their forties, 7.5% for offenders in their fifties, and 2.0% for offenders greater than 60"). See also Wollert, Low Base Rates Limit Expert Certainty When Current Actuarials Are Used to Identify Sexually Violent Predators, 12 Psychol., Pub. Pol'y, & L. 56, 64, 70 (2006) (collecting and performing statistical analysis on ten other studies of 4,673 male sex offenders).

The board does not dispute the accuracy or reliability of this research and does not cite any studies to the contrary. Rather, it justifies its decision not to consider age solely on the basis that age is not considered as a factor in its regulations. As stated, however, the publications that Doe cites are written by many of the same authorities on whom the board relies in its regulations. See 803 Code Mass. Regs. § 1.40. The board's regulations state that the examiner is to be "guided by the definitions, explanations, principles, and *authorities*" contained in the board's regulations. See 803 Code Mass. Regs § 1.22(3) (2002) (emphasis added). We note also that at least six other States have recognized the importance of age as a factor in classifying the dangerousness of sex offenders. See, e.g., Minn. Stat. § 244.052(3)(g)(6) (2008); N.J. Stat. Ann. § 2C:7-8(b)(2) (West 2005); N.Y. Correction Law § 168-l(5)(a)(v), (5)(d) (McKinney 2003 and Supp. 2010); 42 Pa. Cons. Stat. § 9795.4(b)(3)(i) (West 2007 and Supp. 2009). See also Guidelines of the Idaho Sexual Offender Classification Board 3, 6-7 (2006); 13 130 025 Vt. Code R. §§ 4.1, 4.2 (2005).

There was substantial evidence presented at the hearing concerning the effect of age on recidivism. Because Doe was sixty-one at the time of the hearing, it was arbitrary and capricious for the board to classify Doe's "risk of reoffense and degree of dangerousness," G. L. c. 6, § 178K (1), without considering

this evidence. Accordingly, the case must be remanded to the board for new classification proceedings.[6]

5. *Errors in interpreting other regulations.* In addition to the question of his age, discussed *supra*, Doe contends that the board made several errors in interpreting and applying its existing regulations during Doe's classification proceeding. We "accord an agency's interpretation of its own regulations considerable deference unless [it is] arbitrary, unreasonable, or inconsistent with the plain terms of the regulations themselves." *Rasheed* v. *Commissioner of Correction*, 446 Mass. 463, 476 (2006). In this case, the board committed three errors in interpreting its regulations.

First, because Doe's classification hearing took place prior to our decision in *Doe, Sex Offender Registry Bd. No. 89230* v. *Sex Offender Registry Bd.*, 452 Mass. 764 (2008), the board concluded that Doe, an indigent, was not entitled to receive funds for an expert because the board did not intend to rely on an expert. This determination is error. In addition, the board misinterpreted its regulations concerning two additional risk factors: Doe's receipt of sex offender treatment and his acceptance of responsibility for his offense. We now consider each of these issues.

a. *Expert funds.* We agree with Doe that the board erred in denying his motion for funds for an expert solely on the ground that the board did not intend to rely on expert testimony. In classification proceedings before the board, "an indigent offender may . . . apply for and the board may grant payment of fees for an expert witness in any case where the board . . .

---

[6]Because this case will be before the board on remand, the board may wish to consider whether the risk factors set forth in its regulations, see 803 Code Mass. Regs. § 1.40 (2002), should be modified to include an offender's age. The sex offender registry law mandates that the board promulgate guidelines to determine accurately "the level of [an offender's] risk of reoffense and the degree of dangerousness to the public." See G. L. c. 6, § 178K (1). Where, as here, scientific knowledge in a field is rapidly evolving, see An Act Relating to a Legislative Study of the Impact of Compliance with the Federal Adam Walsh Child Protection and Safety Act of 2006, S. 217, Vt. Leg., 2007-2008 Sess. (testimony of Jill S. Levenson on sex offense recidivism, risk assessment, and the Adam Walsh Act), the applicable standards may require more frequent modification in order to reflect accurately the current state of knowledge. See *Commonwealth* v. *Lanigan*, 419 Mass. 15, 27 (1994).

intends to rely on the testimony or report of an expert witness prepared specifically for the purposes of the classification proceeding." G. L. c. 6, § 178L (1) (*a*). Prior to our decision in *Doe, Sex Offender Registry Bd. No. 89230* v. *Sex Offender Registry Bd., supra* at 770, the board interpreted this statute to permit an offender to obtain funds for an expert only if the board intended to present expert testimony. As it was the board's practice not to rely on expert testimony, indigent petitioners were unable to obtain these funds. *Id.*

We have now concluded that G. L. c. 6, § 178L (1), provides the board with discretion to allow funds for an expert in any classification hearing. *Id.* at 770-771. We determined that such an interpretation is consistent with the sex offender registration law's purpose of classifying offenders accurately on an individual basis based on risk of reoffense and degree of dangerousness. *Id.* at 771-772. Moreover, our interpretation avoids grave doubts about the statute's constitutionality were it construed to permit funds for experts for indigent offenders only where the board intended to present expert testimony. *Id.* at 770-771.

The board argues that remand is unnecessary because Doe did not identify the specific reason why he was entitled to funds for an expert. It is true that a general motion for funds is insufficient and that the burden is on the offender to establish the reason why such funds are needed. *Id.* at 775. Because the hearing examiner's decision in Doe's case occurred before our decision in *Doe, Sex Offender Registry Bd. No. 89230* v. *Sex Offender Registry Bd., supra,* Doe did not have the opportunity to present such reasons.[7] As in that case, the record does not reflect an exercise of discretion by the hearing examiner. See *id.* at 775. Therefore, on remand the board must consider whether funds for an expert are necessary given the individual circumstances of Doe's case. See *id.* at 775.[8]

b. *Sex offender treatment.* Doe argues that the board erred by

---

[7]The hearing examiner's classification decision is dated May 14, 2007. Our decision in *Doe, Sex Offender Registry Bd. No. 89230* v. *Sex Offender Registry Bd.,* 452 Mass. 764 (2008), was issued on December 12, 2008.

[8]We apply our decision in *Doe, Sex Offender Registry Bd. No. 89230* v. *Sex Offender Registry Bd., supra,* retroactively because "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases . . . pending on direct review." *Griffith* v. *Kentucky,* 479 U.S. 314, 328 (1987). Although

drawing a negative inference from the fact that he did not undergo sex offender treatment. We agree that the board's application of this risk factor was error.

Successful completion of sex offender treatment may be considered as reducing an offender's risk of reoffense. See 803 Code Mass. Regs. § 1.40(11). It is undisputed that Doe was not offered sex offender treatment while he was incarcerated, and that such treatment was not made a condition of his release. Although the board made no finding that treatment was required of or offered to Doe, it cited Doe's failure to benefit from sex offender treatment as "concerning" and as supporting a determination that Doe was at high risk of reoffense. While the board may consider whether Doe obtained treatment as a factor that reduces his risk of reoffense, it may consider the failure to obtain treatment as an adverse factor only where evidence is presented that such treatment was "available" during incarceration, parole, or probation and the offender "refused to participate" in such treatment. See 803 Code Mass. Regs. § 1.40(17)-(18). On remand, the board may not draw a negative inference from the absence of sex offender treatment where such treatment was neither available nor required during Doe's incarceration, parole, or probation.

c. *Failure to consider Doe's guilty plea.* Doe contends that the board erred in concluding that he denied responsibility for his offense. In making its classification, the board is required to consider "whether, or to what degree, the offender accepts responsibility that he committed his sex offenses." See 803 Code Mass. Regs. § 1.40(9)(c)(13). Here, the board considered Doe's initial statement to Maine police officers denying that he committed the offense. However, the board did not consider the undisputed fact that Doe subsequently pleaded guilty to the offense. Doe's guilty plea, if credited as a genuine expression of accountability, is relevant to whether and to what extent Doe accepted responsibility for his crime. Guilty pleas may often be the product of an available lenient disposition, see *Commonwealth* v. *Ford*, 35

---

sex offender classification proceedings are civil, "the registration law implicates significant liberty interests of sex offenders." See *Doe, Sex Offender Registry Bd. No. 89230* v. *Sex Offender Registry Bd., supra* at 772. Thus, "it is necessary . . . that [the registration law] provide the procedural protections required by due process." See *id.*

Mass. App. Ct. 752, 758 (1994), and may not reflect a genuine acceptance of responsibility. Although it is up to the board to decide whether Doe's plea indicated an acceptance of responsibility, it was error to ignore the plea altogether. On remand, Doe's guilty plea should be weighed in determining whether he accepted responsibility for his offense.

6. *Conclusion.* The judgment that Doe is not subject to the board's jurisdiction is vacated. The case is remanded to the board for further proceedings consistent with this opinion.

*So ordered.*