*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| STATE OF ALASKA, DEPARTMENT OF PUBLIC SAFETY, | ) ) ) | Supreme Court Nos. S-15821/16403 (Consolidated) |
| Appellant, | ) ) | Superior Court No. 3AN-14-08325 CI |
| v. | ) ) | O P I N I O N |
| JOHN DOE I, | ) ) | No. 7270 – August 10, 2018 |
| Appellee. | ) ) | |
| | ) | |
| JOHN DOE II, | ) ) | |
| | ) | Superior Court No. 3AN-15-04577 CI |
| Appellant, | ) ) | |
| v. | ) ) | |
| STATE OF ALASKA, DEPARTMENT OF PUBLIC SAFETY | ) ) ) | |
| Appellee. | ) ) | |
| | ) | |

Appeal in File No. S-15821 from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Catherine M. Easter, Judge.

Appeal in File No. S-16403 from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Erin B. Marston, Judge.

Appearances in File No. S-15821: John J. Novak, Assistant Attorney General, Criminal Division Central Office, Anchorage, and Craig W. Richards, Attorney General, Juneau, for Appellant State of Alaska, Department of Public Safety. John Doe I, pro se, Pacific, Washington, Appellee.

Appearances in File No. S-16403: Darryl L. Thompson, Darryl L. Thompson, P.C., Anchorage, for Appellant John Doe II. John J. Novak, Assistant Attorney General, Criminal Division Central Office, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellee State of Alaska, Department of Public Safety.

File No. S-15821 before: Stowers, Chief Justice, Fabe, Maassen, and Bolger, Justices. [Winfree, Justice, not participating]

File No. S-16403 before: Stowers, Chief Justice, Maassen, Bolger, and Carney, Justices, and Matthews, Senior Justice.[*] [Winfree, Justice, not participating]

PER CURIAM.
STOWERS, Chief Justice, concurring.
FABE, Justice, concurring in File No. S-15821.
MATTHEWS, Senior Justice, concurring in File No. S-16403.

## I.      INTRODUCTION

John Doe I and John Doe II are two separate individuals being required by the Department of Public Safety (DPS) to register as sex offenders in Alaska based on their out-of-state convictions. DPS argues that Doe I's Washington convictions and Doe II's California conviction are "similar" to the Alaska offense of attempted sexual abuse of a minor under AS 11.31.100 and AS 11.41.436(a)(2), making both Doe I and

---

[*]      Sitting by assignment made under article IV, section 11 of the Alaska Constitution and Alaska Administrative Rule 23(a).

Doe II subject to Alaska's sex offender registration requirement. One superior court judge determined that Doe I is not required to register; another superior court judge determined that Doe II is required to register. The cases have been consolidated on appeal. We conclude that neither the Washington nor the California laws under which Doe I and Doe II were convicted are similar to the relevant Alaska law and therefore hold that neither Doe I nor Doe II is required to register under Alaska law.

## II.     FACTS AND PROCEEDINGS

### A.     *DPS v. Doe I*, S-15821

In June 2011, at the age of 51, John Doe I pleaded guilty to two counts of "communicating with a minor for immoral purposes" in violation of the Revised Code of Washington (RCW) 9.68A.090; violation of this statute is a gross misdemeanor. In his guilty plea, Doe I admitted that "between October 1, 2009 and October 31, 2009, on two separate occasions, [he] communicated with [an 11-year-old] . . . for an immoral purpose of a sexual nature." The Washington superior court sentenced Doe I to two consecutive twelve-month sentences and suspended the sentences, ordering three months of confinement for each count and four years of probation. The court ordered him to obtain a sexual deviancy evaluation, to have no contact with the victim and "no unsupervised contact with minors," and to register as a sex offender.[1]

In April 2014 Doe I formally petitioned the Alaska DPS Sex Offender Registry for a determination whether he would be required to register as a sex offender

---

[1]      Doe I was required to register as a sex offender in his county of residence in Washington for a period of ten years. *Doe v. State*, 352 P.3d 500, 502 (Idaho 2015). Because RCW 9.68A.090 is a misdemeanor, under Washington law his registration information was to be "used only for law enforcement purposes" and was not available "on the publicly accessible Washington sex offender website." *Id.* Doe I acknowledged during oral argument before our court that *Doe v. State*, decided by the Idaho Supreme Court in June 2015, "is [his] case as well."

in Alaska. He represented that he had an upcoming work project in Alaska that was unlikely to require more than 30 days in the state but that he also had other work prospects in Alaska as well as family that he would like to visit. He indicated that "[p]rior to spending more time in Alaska, [he] wish[ed] to understand if [his] presence [would] trigger a registration requirement." In June 2014 DPS informed Doe I that, because of his two convictions in Washington, he must "register [as a sex offender] quarterly, for life, while . . . work[ing] or liv[ing] in Alaska."

Doe I subsequently filed a complaint in the Alaska Superior Court for declaratory judgment and injunctive relief, asking for a declaration that his conviction under RCW 9.68A.090 "is not 'similar' to an Alaska sex offense as defined by AS 12.63.100" and that he was therefore not required to register as a sex offender in Alaska. The superior court heard oral argument and issued an order ruling that Doe I was not required to register. DPS appeals.

## B. *Doe II v. DPS*, S-16403

In October 2014 John Doe II was convicted of violating California Penal Code 647.6(a), "[a]nnoying or molesting child under 18." After pleading no contest, he was sentenced to two years of probation; upon successfully completing probation, he would be permitted to "apply to the Court to have [his] conviction set aside pursuant to Section 1203.4 of the Penal Code." He was required to register as a sex offender if he resided in California.

Doe II moved to Alaska prior to sentencing and did not register as a sex offender. In December 2014, upon determining that his California conviction was similar to the Alaska offense of attempted sexual abuse of a minor in AS 11.41.436(a)(2), DPS informed him that he was required to register in Alaska. He argued through a letter from his attorney to DPS that he was not a sex offender as defined in AS 12.63.100(5). DPS treated the letter as an administrative appeal and sent him a letter affirming its

determination that he must register as a sex offender in Alaska annually for 15 years based on his California conviction.

Doe II appealed to the superior court and the court granted him a limited stay of the DPS decision. The stay required him to register but enjoined DPS from publically disseminating any identifying information about him on the sex offender website. Oral argument was held and a written decision was issued affirming DPS's decision. Doe II appeals.

## III. STANDARD OF REVIEW

"Where the superior court acts as an appellate court reviewing a decision by an administrative agency, we independently review the underlying administrative decision."[2] DPS argues that its agency decision involves agency expertise and is thus subject to the "reasonable basis" test,[3] because DPS "has been responsible for interpreting and administering the Alaska Sex Offender Registration Act ('ASORA') ever since it came into effect in 1994." However, "where the agency's expertise provides little guidance to the court or where the case concerns statutory interpretation or other analysis of legal relationships about which courts have specialized knowledge and expertise," the substitution of judgment standard applies.[4] The question whether a law of another

---

[2]    *State, Dep't of Nat. Res. v. Alaska Riverways, Inc.*, 232 P.3d 1203, 1207 (Alaska 2010).

[3]    *Id.*

[4]    *Grimmett v. Univ. of Alaska*, 303 P.3d 482, 487 (Alaska 2013) (quoting *N. Alaska Envtl. Ctr. v. State, Dep't of Nat. Res.*, 2 P.3d 629, 633 (Alaska 2000)); *see also Konecky v. Camco Wireline, Inc.*, 920 P.2d 277, 280 n.8 ("[W]hen the 'issue to be resolved turns on statutory interpretation rather than formulation of fundamental policy involving particularized expertise of administrative personnel, . . . we shall independently consider the meaning of the statute.' " (second alteration in original) (quoting *Hood v. State, Workmen's Comp. Bd.*, 574 P.2d 811, 813 (Alaska 1978))).

jurisdiction is "similar" to a specified Alaska statute is a question of statutory interpretation and is thus "within the scope of the court's special competency"[5] and "is a question of law to which we apply our independent judgment."[6] "We interpret statutes 'according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose.' "[7] Questions of statutory interpretation are decided on a sliding scale, which means that "the plainer the language of the statute, the more convincing any contrary legislative history must be."[8]

## IV. DISCUSSION

### A. "Similar Law Of Another Jurisdiction"

When interpreting a statute, "we begin with the plain meaning of the statutory text."[9] ASORA requires 15 years of registration for individuals convicted of a single non-aggravated sex offense, and lifetime registration for individuals convicted of two or more sex offenses or a single aggravated offense.[10] Alaska Statute 12.63.100(6)(C) defines "sex offense" as "a crime, or an attempt, solicitation, or

---

[5] *Union Oil Co. of Cal. v. Dep't of Revenue*, 560 P.2d 21, 23 (Alaska 1977) (citing *State v. Aleut Corp.*, 541 P.2d 730, 736-37 (Alaska 1975)).

[6] *Hendricks-Pearce v. State, Dep't of Corr.*, 323 P.3d 30, 35 (Alaska 2014) (citing *Native Vill. of Tununak v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 303 P.3d 431, 440 (Alaska 2013)).

[7] *Attorneys Liab. Prot. Soc'y, Inc. v. Ingaldson Fitzgerald, P.C.*, 370 P.3d 1101, 1105 (Alaska 2016) (quoting *Municipality of Anchorage v. Stenseth*, 361 P.3d 898, 904 (Alaska 2015)).

[8] *City of Valdez v. State*, 372 P.3d 240, 248 (Alaska 2016) (quoting *Peninsula Mktg. Ass'n v. State*, 817 P.2d 917, 922 (Alaska 1991)).

[9] *Hendricks-Pearce*, 323 P.3d at 35 (citing *Ward v. State, Dep't of Pub. Safety*, 288 P.3d 94, 98 (Alaska 2012)).

[10] AS 12.63.020(a).

conspiracy to commit a crime, under [one of the listed statutes] or *a similar law of another jurisdiction*." (Emphasis added.) Because "similar" modifies "law of another jurisdiction," based on the plain language of the statute, it is the *law* that must be similar. We therefore "employ a categorical approach by looking to the statute . . . of conviction, rather than to the specific facts underlying the crime" to determine whether that statute is similar to one of the pertinent Alaska sex offenses under AS 12.63.100(6)(C).[11]

Under the categorical approach, we compare the elements of the statute of conviction to the elements of the allegedly similar Alaska statute.[12] As in the presumptive sentencing context, if the out-of-state statute is "more restrictive than the Alaska statute" in such a way that "any offender who could be convicted under the [out-of-state] law would be subject to conviction under the elements of the Alaska statute," the elements are "similar."[13] However, "[e]ven if there might be conduct that would be penalized by the [out-of-state] statute, but not Alaska's, that does not prevent a conclusion that the elements . . . are similar."[14]

---

[11]     *See Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562, 1568 (2017) (alteration in original) (quoting *Kawashima v. Holder*, 565 U.S. 478, 483 (2012)).

[12]     *See Borja v. State*, 886 P.2d 1311, 1313 (Alaska App. 1994).

[13]     *State v. Delagarza*, 8 P.3d 362, 366 (Alaska App. 2000) (quoting *Martin v. State*, 704 P.2d 1341, 1342 (Alaska App. 1985)); *cf. Esquivel-Quintana*, 137 S. Ct. at 1568 ("Under [the categorical] approach, we ask whether ' "the state statute defining the crime of conviction" categorically fits within the "generic" federal definition of a corresponding aggravated felony.' In other words, we presume that the state conviction 'rested upon . . . the least of th[e] acts' criminalized by the statute, and then we determine whether that conduct would fall within the federal definition of the crime." (second and third alterations in original) (citation omitted) (first quoting *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013); then quoting *Johnson v. United States*, 559 U.S. 133, 137 (2010))).

[14]     *Delagarza*, 8 P.3d at 367.

In addition to considering the meaning of the language of a statute, we also consider its legislative history and purpose.[15] DPS argues that the legislative history and purpose of ASORA support "an evaluation of the full picture — the elements of the offense as well as the facts of the actually engaged in conduct — so as to be able to make fully informed registration requirement decisions, rather than decisions restricted to only comparing elements."

The legislature made the following legislative findings when enacting ASORA:

> (1) sex offenders pose a high risk of reoffending after release from custody;

> (2) protecting the public from sex offenders is a primary governmental interest;

> (3) the privacy interests of persons convicted of sex offenses are less important than the government's interest in public safety; and

> (4) the release of certain information about sex offenders to public agencies and the general public will assist in protecting the public safety.[16]

Although the approach argued for by DPS might be consistent with these legislative findings, the strict categorical approach also serves a protective purpose and is not contrary to the legislative findings. We disagree with DPS's approach. We conclude that the plain meaning of the statute is not overcome by contrary legislative history.

---

[15] *Attorneys Liab. Prot. Soc'y, Inc. v. Ingaldson Fitzgerald, P.C.*, 370 P.3d 1101, 1105 (Alaska 2016) (quoting *Municipality of Anchorage v. Stenseth*, 361 P.3d 898, 904 (Alaska 2015)).

[16] *Doe v. State*, 189 P.3d 999, 1015-16 (Alaska 2008) (quoting Ch. 41, § 1, SLA 1994).

Having determined that AS 12.63.100(6)(C) requires a comparison of laws, we next turn to the question of the meaning of "similar." ASORA provides no definition of "similar," so we look to the plain meaning of the term.

We find it useful to consider how other states define the standard of comparative resemblance between their home statutes and those of other jurisdictions. Idaho's sex offender registration statute employs a "substantially equivalent" standard for determining whether a person convicted of a crime in another jurisdiction must register in Idaho.[17] Under Idaho law, "substantially equivalent" in the sex offender registration context "means any sex offense related crime, regardless of whether a felony or misdemeanor, that consists of similar elements defined in Title 18 of the Idaho Criminal Code. It does not mean exactly the same, nor exactly identical to."[18] Texas requires that the out-of-state violation must "contain[] elements that are substantially similar" for registration to be required under its sex offender registration statutes.[19] New Mexico defines "sex offense" by listing specific offenses and indicating that "their equivalents in any other jurisdiction" are included in its definition.[20] And Massachusetts requires registration for any "like violation of the laws of another [jurisdiction],"[21] which has been defined as meaning "a conviction in another jurisdiction of an offense of which the elements are the same or nearly the same as an offense requiring registration in

---

[17]    Idaho Code Ann. § 18-8304(1)(c) (2016).

[18]    *Doe v. State*, 352 P.3d 500, 504 (Idaho 2015) (quoting Idaho Admin. Code. r. 11.10.03.010.05 (2015)).

[19]    Tex. Code Crim. Proc. Ann. art. 62.001(5)(H) (West 2016).

[20]    N.M. Stat. Ann. § 29-11A-3(I) (West 2013).

[21]    Mass. Gen. Laws Ann. ch. 6, § 178C (West 2016).

Massachusetts."[22] The operative wording in these states' statutes ("substantially equivalent," "substantially similar," "equivalents," "like violation") suggests a higher degree of resemblance than does Alaska's use of the unqualified term "similar."

We also find it useful to consider dictionary definitions when assessing the plain meaning of a term.[23] The American Heritage Dictionary of the English Language defines "similar" as "[h]aving a resemblance in appearance or nature; alike, though not identical."[24] Webster's II New College Dictionary defines "similar" as "[r]esembling though not completely identical."[25] And Merriam-Webster's online dictionary defines "similar" as "having characteristics in common" or as "alike in substance or essentials."[26]

Consistent with the dictionary definitions, "a similar law of another jurisdiction" does not mean that the elements of the offense must be identical or even substantially equivalent, but the elements do have to be categorically alike with no significant differences. A relatively broad reading of "similar" is also supported by the legislative history and purpose of ASORA, because a broad reading helps promote the

---

**22**     *Doe v. Sex Offender Registry Bd.*, 925 N.E.2d 533, 538 (Mass. 2010). Like Idaho, Massachusetts also qualifies its definition by noting that "[t]he elements of the offense in another jurisdiction need not be precisely the same as the elements of a Massachusetts sex offense in order for it to constitute a 'like violation.' " *Id.*

**23**     *See Benavides v. State*, 151 P.3d 332, 335-36 (Alaska 2006).

**24**     *Similar*, THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2011).

**25**     *Similar*, WEBSTER'S II NEW COLLEGE DICTIONARY (1st ed. 1995).

**26**     *Similar*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary /similar (last visited Apr. 19, 2018).

"primary governmental interest" of "protecting the public from sex offenders."[27]  We construe the plain meaning of "similar" used in AS 12.63.100(6)(C) to require a relatively broad standard for the degree of resemblance necessary for sex offenders from other jurisdictions to be subject to sex offender registration in Alaska.

## B.    *DPS v. Doe I*, S-15821

Doe I was convicted of two counts of communicating with a minor for immoral purposes in violation of RCW 9.68A.090, which provides that "a person who communicates with a minor for immoral purposes, or a person who communicates with someone the person believes to be a minor for immoral purposes, is guilty of a gross misdemeanor."  Under RCW 9.68A.011(5), a "minor" is "any person under eighteen years of age."  According to Washington case law, "communicate" means "conduct as well as words,"[28] and "immoral purpose" means "sexual misconduct."[29]

The allegedly similar Alaska offense is attempted sexual abuse of a minor in the second degree under AS 11.31.100 and AS 11.41.436(a)(2).  Under AS 11.31.100, "[a] person is guilty of an attempt to commit a crime if, with intent to commit a crime, the person engages in conduct which constitutes a substantial step toward the commission of that crime."  Under AS 11.41.436(a)(2), sexual abuse of a minor is committed if, "being 16 years of age or older, the offender engages in sexual contact with a person who is under 13 years of age or aids, induces, causes, or encourages a person under 13 years of age to engage in sexual contact with another person."  "[S]exual contact" is defined in

---

[27]    *Doe v. State*, 189 P.3d 999, 1015 (Alaska 2008) (quoting Ch. 41, § 1, SLA 1994).

[28]    *State v. Hosier*, 133 P.3d 936, 941 (Wash. 2006).

[29]    *Id.*; *State v. McNallie*, 846 P.2d 1358, 1364 (Wash. 1993) ("[T]he statute prohibits communication with children for the predatory purpose of promoting their exposure to and involvement in sexual misconduct.").

AS 11.81.900(b)(59)(A) as "the defendant's (i) knowingly touching, directly or through clothing, the victim's genitals, anus, or female breast; or (ii) knowingly causing the victim to touch, directly or through clothing, the defendant's or victim's genitals, anus, or female breast."

A comparison between RCW 9.68A.090 and the Alaska offense of attempted sexual abuse of a minor in the second degree reveals some similarity in that both involve sexual misconduct that is directed at a child victim. However, there are significant differences between the statutes, such as the fact that the Alaska statute requires conduct whereas the Washington statute may be violated through either conduct or words.[30] The Alaska statute specifically requires attempted sexual *contact*, but the Washington statute is broader, "prohibit[ing] communication with children for the predatory purpose of promoting their exposure to and involvement in sexual misconduct."[31] And the Alaska statute requires a victim to be under age 13 whereas the Washington statute requires only that a victim be under age 18 or an adult victim whom the offender believes to be under 18.[32] Because the Washington statute is significantly broader than and different from the Alaska statute, Washington's statute is not similar to the Alaska offense of attempted sexual abuse of a minor in the second degree for purposes

---

[30]     *See Hosier*, 133 P.3d at 941.

[31]     *McNallie*, 846 P.2d at 1364; *see, e.g.*, *Hosier*, 133 P.3d 936 (affirming two convictions of communicating with a minor for immoral purposes where the defendant left sexually explicit notes about a 13-year-old girl in the girl's front yard, and wrote a sexually explicit message on a pair of underpants left in the fence of a children's playground where it was found by a group of small children).

[32]     Because we conclude that the Washington statute is not similar to the Alaska statute on grounds distinct from the age of the victim, we do not decide in this appeal whether the age differences in themselves make the laws dissimilar under a strict categorical approach.

of sex offender registration. Doe I is therefore not required to register as a sex offender in Alaska, and we affirm the superior court's decision.

### C. *Doe II v. DPS*, S-16403

Doe II was convicted of violating California Penal Code 647.6(a) ("Annoying or molesting child under 18"), which reads as follows:

> (a)(1) Every person who annoys or molests any child under 18 years of age shall be punished by [a fine of up to $5,000 and/or imprisonment for up to a year].
>
> (2) Every person who, motivated by an unnatural or abnormal sexual interest in children, engages in conduct with an adult whom he or she believes to be a child under 18 years of age, which conduct, if directed toward a child under 18 years of age, would be a violation of this section, shall be punished by [a fine of up to $5,000 and/or imprisonment for up to a year].

In *People v. Phillips*, the California Court of Appeal interpreted California Penal Code 647.6(a) as consisting of four elements: (1) "objectively and unhesitatingly irritating or annoying conduct" that is "(2) motivated by an abnormal sexual interest in children in general or a specific child" and is (3) "directed at a child or children, though no specific child or children need be the target of the offense"; furthermore, "(4) a child or children [must be] victims."[33] Doe II's conviction does not specify whether it was under subsection (a)(1) (which requires a victim under age 18) or subsection (a)(2) (which allows for an adult victim whom the offender believes to be under 18), so any facts found by a court of law or conceded by Doe II could be considered for the limited purpose of

---

[33] 116 Cal. Rptr. 3d 401, 411 (Cal. App. 2010).

determining which subsection he was convicted under, but no such facts are available in this case.[34]

Again, the allegedly similar Alaska offense is attempted sexual abuse of a minor in the second degree under AS 11.31.100 and AS 11.41.436(a)(2), as described in detail in the previous section. Like RCW 9.68A.090, California Penal Code 647.6(a) broadly resembles the Alaska offense in that it involves sexual misconduct directed at an underage victim. But again, there are significant differences between the statutes as well: while the Alaska offense requires an attempt at actual sexual contact, the California statute has been interpreted to include engaging in offensive conduct with the intent that it be observed by a child or children.[35] And the Alaska statute applies where the victim is under age 13 while the California statute applies where the victim is under 18 or the offender believes the victim to be under 18.[36] Thus, the California offense of annoying

---

[34] A "modified categorical approach" is employed for divisible statutes, which define multiple separate crimes. *See Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016) (citing *Descamps v. U.S.*, 133 S. Ct. 2276, 2283 (2013)); *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562, 1568 n.1 (2017) (citing *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 187 (2007)). Under the modified categorical approach, "the court may review the charging documents, jury instructions, plea agreement, plea colloquy, and similar sources to determine the actual crime [of conviction]." *Esquivel-Quintana*, 137 S. Ct. at 1568 n.1 (citing *Gonzales*, 549 U.S. at 187). This permissible modified categorical approach is different from the approach DPS urges us to adopt; it looks to the facts on record only to determine which statutory crime was committed, and not when comparing that crime to the allegedly similar Alaska statute.

[35] *People v. Phillips*, 116 Cal. Rptr. 3d 401, 409, 412 (Cal. App. 2010) (upholding a conviction for violating California Penal Code 647.6(a)(1) because it was reasonable for the jury to infer that the defendant "intend[ed] to be observed by some child" when he was "masturbating in his car while parked at the curb directly in front of a high school, on a school day, at school dismissal time").

[36] Because we conclude that the California statute is not similar to the Alaska
(continued...)

or molesting a child under 18 is different from and substantially broader than the Alaska offense of attempted sexual abuse of a minor in the second degree, and we conclude that the two are not similar for purposes of sex offender registration.[37]  Doe II is therefore not required to register as a sex offender in Alaska, and the decision of the superior court is reversed.  Doe II is remanded to the superior court for that court to address its stay order and order DPS to remove Doe II's information from the Alaska sex offender registry.

## V.    CONCLUSION

We AFFIRM the superior court's decision that Doe I is not required to register as a sex offender in Alaska and REVERSE and REMAND the superior court's decision that Doe II is required to register as a sex offender in Alaska.

---

[36](...continued)
statute on grounds distinct from the age of the victim, we do not decide in this appeal whether the age differences in themselves make the laws dissimilar under a strict categorical approach.

[37]    It is well within the legislature's prerogative to enact a definition of "similar" or amend AS 12.63.100(6)(C) or amend the underlying sex offense crimes if it wishes to broaden the scope of sexual offenses that require registration in Alaska.

STOWERS, Chief Justice, concurring.

I agree with the court's opinion.  I write separately to comment on Senior Justice Matthews's proposed approach to determining whether an out-of-state sexual offense law is "similar" to an Alaska sexual offense law such that registration would be required in Alaska under the Alaska Sex Offender Registration Act.

As explained in the court's main opinion, AS 12.63.100(6)(C) defines "sex offense" as "a crime, or an attempt, solicitation, or conspiracy to commit a crime, under [one of the listed sex offense statutes] or *a similar law of another jurisdiction*." (Emphasis added.)   Today's opinion applies a strict categorical approach in comparing the elements of Alaska's relevant sex offense statute with the elements of the out-of-state sex offense statute under which the person was convicted to determine whether the two laws are similar.  The court does so because "it is the *law* that must be similar" and therefore "we compare the elements of the statute of conviction to the elements of the allegedly similar Alaska statute."[1]

Senior Justice Matthews argues that the court's approach is too narrow.  He suggests the analytical approach should begin with this categorical statutory comparison, but if the comparison does not yield a conclusion that the two statutory offenses are similar, then a second-stage analysis should ensue:  the court should consider the factual conduct underpinning the out-of-state conviction to determine whether that conduct would have constituted a sexual offense under Alaska law.[2]  To determine these facts, the court could permissibly consider the complaint or indictment, jury instructions, court

---

[1]    Op. at 7 (emphasis in original).

[2]    Matthews, Senior Justice, Conc. at 21-22.

findings of fact in a judge-tried case, and plea and sentencing transcripts.[3] Senior Justice Mathews argues that this law-plus-conduct approach better promotes the legislature's intent in enacting ASORA and that the court's strict categorical approach "thwart[s] the legislature's intent because it would prevent [our] law from reaching some of the offenses identified by the [legislature] only because of idiosyncracies in the criminal codes of foreign jurisdictions."[4]

As a purely theoretical matter, I agree with Senior Justice Matthews. The law-plus-conduct approach suggested by Senior Justice Matthews — like that employed by the New Mexico Supreme Court in *State v. Hall*[5] — *would* result in more out-of-state convicted sex offenders being required to register with the Alaska sex offender registry and likely would better accomplish the policy goals the legislature envisioned when it enacted ASORA. The problem is that the legislature used specific language when it crafted the statute requiring similarity: the legislature defined "sex offense" as "a crime, or an attempt, solicitation, or conspiracy to commit a crime, under [one of the listed sex offense statutes] or *a similar law of another jurisdiction*."[6] Had the legislature wanted to ensure that the conduct underlying the out-of-state conviction should also be considered, it could have said so.

For example, if the legislature wanted to craft an even more broad-sweeping sex offender registry statute, it could take the approach suggested by the New Mexico Supreme Court in *Hall*. The court in *Hall* adopted an approach like that advocated by

---

[3]     Matthews, Senior Justice, Conc. at 23-26, 23 n.11.

[4]     Matthews, Senior Justice, Conc. at 27-28 (quoting *State v. Lloyd*, 970 N.E. 2d 870, 877 (Ohio 2012)).

[5]     294 P.3d 1235 (N.M. 2012).

[7]     AS 12.63.100(6)(C) (emphasis added).

-17-                                                    **7270**

Senior Justice Matthews, permitting New Mexico trial courts to consider the charging documents, the plea agreement, and the transcript of the plea hearing to determine the actual conduct that supported a defendant's sex offense conviction from another state.[7] But even under this approach, the New Mexico Supreme Court warned:

> We realize that in some cases, such as a guilty plea in which there was no allocution, there will be no factual findings for a New Mexico court to review. In that instance, the court will be limited to comparing the elements of the foreign sex offense to those of the enumerated offenses under [the New Mexico sex offender registration act]. In some cases, this will mean that out-of-state sex offenders will not have to register in New Mexico, even for serious offenses. ***If the Legislature is disturbed by this possibility, it is free to amend SORNA once again. Several states have passed laws requiring out-of-state sex offenders to register for any offense that was registrable in the state of conviction.*** *See, e.g.,* Ind. Code Ann. § 11-8-8-5(b)(1) (West 2012) (The term "sex or violent offender" includes "a person who is required to register as a sex or violent offender in any jurisdiction."); Mont. Code Ann. § 46-23-502(9)(b) (2007) (A "sexual offense" includes "any violation of a law of another state, a tribal government, or the federal government that is reasonably equivalent to a violation listed in subsection (9)(a) *or* for which the offender was required to register as a sexual offender after an adjudication or conviction." (Emphasis added)). [8]

Alaska's statute contains no comparable language requiring out-of-state sex offenders to register in Alaska for any offense for which they were required to register as a sex offender in the state of conviction, nor does Alaska's statute permit the court to consider the factual conduct giving rise to the out-of-state sex offense conviction.

---

[7]     294 P.3d at 1240.

[8]     *Id*. at 1240-41 (bold emphasis added).

Senior Justice Matthews's approach is, in my opinion, a rational approach and one that the Alaska Legislature may well wish to consider going forward. Or the legislature may wish to consider a more inclusive approach like that taken in Montana or Indiana. But whatever approach is taken is a policy decision, and policy decisions of this kind are decisions the legislature, not this court, should make. The strict categorical approach applied by this court in this case is faithful to the language of the current statute, and I therefore agree with the court's opinion.

FABE, Justice, concurring.

I agree with the result of the court's opinion.[1] But I also agree with Part IV of Senior Justice Matthews's concurring opinion and would not resolve the question whether we should apply the categorical approach or an approach that permits reference to court documents in deciding this case. As Senior Justice Matthews points out, "the statutes being compared are not similar under either approach that might be used." And as he suggests, our cases "have frequently counseled against deciding questions in the abstract." Thus, I join his view that we should "defer[] the decision as to which approach is preferable to a case in which the choice actually makes a difference."

---

[1]     I am participating in only one of the cases in this consolidated opinion, *State, Dep't of Publ Safety v. Doe,* S-15821 (Case No. 3AN-14-08325 CI).

MATTHEWS, Senior Justice, concurring.

## I.    INTRODUCTION

Today the court holds that only statutory language can be consulted when determining whether a foreign conviction was committed under a statute similar to an Alaska statute listed in ASORA.  In my opinion, a foreign statute should be regarded as similar to a narrower Alaska statute for ASORA purposes when it covers the same conduct as the Alaska statute, as well as other conduct, if in a particular case it is clear that the foreign conviction was based on conduct that would satisfy the elements of the Alaska statute.  Since sometimes court records can show this, I would not preclude referring to them in limited circumstances.  The legislature intended ASORA to apply broadly in order to best achieve its public safety purposes.  The approach I favor should be adopted rather than the strict approach taken by the court because it is more consistent with this intent.  It is also in accord with the overwhelming majority of cases decided under SORA statutes in other jurisdictions.

## II.    HOW I WOULD DECIDE THIS CASE

I agree with the result of the court's opinion.[1]  But I do not think that it is enough to say that the California "annoying or molesting" statute is not similar to the Alaska sexual abuse of a minor statute merely because the California statute covers, for example, indecent exposure as well as sexual contact crimes.[2]

The approach I favor would first compare the statutory language.  If the California statute is similar to the Alaska statute, but broader because it covers additional conduct, further inquiry would be called for.  Specifically, the question would be

_____

[1]    I am participating only in one of the cases in this consolidated proceeding, *Doe v. State, Dep't of Pub. Safety*, S-16403 (Case No. 3AN-15-04577 CI) ("Doe II").

[2]    Op. at 14-15.

whether, based on the court records in the California proceeding, Doe II's conviction in California was necessarily based on conduct similar to that required for a conviction under the Alaska statute identified as similar by the Department, attempted sexual abuse of a minor in the second degree under AS 11.41.436(a)(2).

The first step, statutory comparison for similarity, might be met in the present case. The "annoying or molesting" and the sexual abuse of a minor statutes have similar purposes — protecting minors from inappropriate sexual behavior by others.[3] The conduct forbidden under the California law — conduct "so lewd or obscene that the normal person would unhesitatingly be irritated by it"[4] — is broader than the conduct forbidden under AS 11.41.436(a)(2), but it would encompass such conduct — knowingly sexually touching a child under 13 or causing such a child to sexually touch herself or another person.[5] Further, both statutes require violators to register as sexual offenders.[6]

Of course, there are differences between the two statutes apart from the broader scope of the conduct prohibited under the California statute. The difference in the maximum age of the potential victims — 17 in California[7] and 12 in Alaska[8] — may

---

[3]     While the Department determined Doe II's conviction was similar to attempted sexual abuse, I consider only the substantive elements set out in AS 11.41.436(a)(2) and not those in the attempt statute in making the comparison.

[4]     *People v. Carskaddon*, 318 P.2d 4, 5 (Cal. 1957) (en banc).

[5]     AS 11.41.436(a)(2), AS 11.81.900(a)(59).

[6]     AS 12.63.010, .100(5)-(6); Cal. Penal Code § 290(c) (West 2014 & Supp. 2018).

[7]     Cal. Penal Code § 647.6(a)(1).

[8]     AS 11.41.436(a)(2).

be significant.  The fact that the California offense is a misdemeanor[9] and the Alaska offense is a felony[10] could also be significant.  An accused might much more readily plead guilty or no contest to charges under the California statute than to charges under the Alaska statute.  But I will assume for the purpose of discussion that these differences would not render the laws dissimilar for registration purposes, and go to the second inquiry as to the nature of the underlying offense.

If it were clear from the facts established by the court records[11] in the California proceeding (1) what the nature of Doe II's conduct was that formed the basis for his conviction and (2) that such conduct was necessarily similar to conduct that would constitute attempted sexual abuse of a minor in the second degree under subsection .436(a)(2) in Alaska, the statutory standard for registration would be met, in my opinion.  It would then be fair to say that Doe II was convicted of a "sex offense" as that term is used in ASORA, because Doe II's crime would be similar to attempted sexual abuse of a minor and would have been committed under a statute that, except for the greater breadth of its coverage, is similar in its purpose and its applicable elements to Alaska's statute.

But the conduct on which Doe II's conviction was based is not established by the California court records.  For this reason I agree that there is no permissible basis in this case for concluding that Doe II's conviction in California was for a sex offense as that term is defined under ASORA and thus he is not a "sex offender" with a duty to register.

---

[9]        Cal. Penal Code §§ 17(a), 1170(h), 647.6(a).

[10]       AS 11.41.436(b).

[11]       By this I mean the complaint or indictment, jury instructions, court findings in a judge-tried case, and plea and sentencing transcripts.

All states now have SORAs. Almost all state courts that have ruled on the issue have adopted some variant of the approach that I favor.[12] I will quote from three other jurisdictions to give the reader a better sense of this body of law:

- Washington Court of Appeals:

    To determine whether an out-of-state conviction qualifies as a "sex offense," a trial court compares the out-of-state statute with comparable laws of this state. This is a two-step process, addressing both the legal definitions of the crimes and the facts underlying the convictions. First, the trial court must examine the elements of the out-of-state crime and compare them to the elements of the comparable Washington crime. If the crimes have similar elements, the analysis is complete. But, "[i]f the elements are not identical, or the foreign statute is broader than the Washington definition of the particular crime," then, as a second step, the trial court may examine the facts of the out-of-state crime " 'as evidenced by the indictment or information.' "[13]

---

[12] *See* Tracy Bateman Farrell, Annotation, *Validity, Construction, and Application of State Statutory Requirement that Person Convicted of Sexual Offense in Other Jurisdiction Register or Be Classified as Sexual Offender in Forum State*, 34 A.L.R.6th 171 §§ 25-26 (2008) (Westlaw) (database updated March 2017). The Annotation cites only three jurisdictions (Arizona, Massachusetts, and Ohio) as supporting the view that a court may not look beyond the statutory language. *See id.* § 26. But in light of *State v. Lloyd*, 970 N.E.2d 870 (Ohio 2012), Ohio should no longer be included, and the Arizona case cited by the Annotation, *State v. Kuntz*, 100 P.3d 26, 30 n.3 (Ariz. App. 2004), indicates that the criminal complaint upon which a foreign conviction is based can be considered if incorporated in the judgment. Further, the Arizona legislature, after the decision in *Kuntz*, largely mooted the effect of that decision by amending the Arizona SORA to require registration of any offender who has been required to register in another jurisdiction. *See State v. Lowery*, 287 P.3d 830, 835-36 (Ariz. App. 2012). Case law in Massachusetts does support the opinion of the court. *See Doe v. Sex Offender Registry Bd.*, 925 N.E.2d 533 (Mass. 2010).

[13] *State v. Howe*, 212 P.3d 565, 567 (Wash. App. 2009) (alteration in original)

(continued...)

- New Mexico Supreme Court:

> When the elements of the out-of-state sex offense are precisely the same elements of a New Mexico sex offense, the inquiry is at an end. However, even when the elements are dissimilar, courts should consider the defendant's underlying conduct to determine whether the defendant's conduct would have required registration in New Mexico as a sex offender.
>
> . . . .
>
> The remaining question is how should a New Mexico court determine the actual conduct that supported the defendant's conviction of a sex offense in another jurisdiction when deciding equivalency under SORNA. . . . When a defendant enters a plea of guilty or nolo contendere, the charging document, plea agreement, or transcript of the plea hearing should establish the factual basis for the plea. A New Mexico court should consider the facts stated in such documents when determining whether the conduct underlying the plea would have constituted a violation of one of the twelve enumerated SORNA offenses that require sex offender registration. In essence, the question is whether the out-of-state fact-finder necessarily must have found facts that would have proven the elements of the New Mexico registrable offense. If so, the alleged sex offender has committed the equivalent of an enumerated New Mexico sex offense.
>
> . . . .

---

[13](...continued)
(citations omitted) (quoting *State v. Morley*, 952 P.2d 167, 175-76 (Wash. 1998)). It is worthy of note that Doe II agrees with the approach outlined in *Howe*. This serves to illustrate the point made later in this concurring opinion that deciding between the court's "categorical approach" and the approach I prefer is not necessary to the outcome of this case. *See infra* p. 29.

We realize that in some cases, such as a guilty plea in which there was no allocution, there will be no factual findings for a New Mexico court to review. In that instance, the court will be limited to comparing the elements of a foreign sex offense to those of the enumerated offenses under SORNA. In some cases, this will mean that out-of-state sex offenders will not have to register in New Mexico, even for serious offenses.[14]

- Ohio Supreme Court:

  We conclude that in order to determine whether an out-of-state conviction is substantially equivalent to a listed Ohio offense, a court must initially look only to the fact of conviction and the elements of the relevant criminal statutes, without considering the particular facts disclosed by the record of conviction. If the out-of-state statute defines the offense in such a way that the court cannot discern from a comparison of the statutes whether the offenses are substantially equivalent, a court may go beyond the statutes and rely on a limited portion of the record in a narrow class of cases where the factfinder was required to find all the elements essential to a conviction under the listed Ohio statute. To do so, courts are permitted to consult a limited range of material contained in the record, including charging documents, plea agreements, transcripts of plea colloquies, presentence reports, findings of fact and conclusions of law from a bench trial, jury instructions and verdict forms, or some comparable part of the record.[15]

Here are the reasons I think that the approach I favor should be preferred to the court's categorical approach. First, the criminal statutes of the several states come in many forms, and it is to be expected that many individual statutes will cover both conduct requiring registration in Alaska and conduct that does not require registration.

---

[14]    *State v. Hall*, 294 P.3d 1235, 1239-40 (N.M. 2012).

[15]    *Lloyd*, 970 N.E.2d at 877.

Any thoughtful lawmaker would be aware of this fact. Second, the Alaska Legislature wanted offenders who had committed crimes elsewhere that are similar to crimes requiring registration in Alaska to register as sex offenders when moving to Alaska.[16] Third, as the court notes, the legislature by its use of the unmodified term "similar" intended that Alaska's standard should be given "a relatively broad reading" and, relatedly, suggested that it desired Alaska to be more inclusive with respect to out-of-state crimes than states using comparative phrases such as "substantially equivalent," "substantially similar," "equivalents," or "like violation."[17] But the court's strict

---

[16] This observation is supported by common sense — What else could the legislature have intended? — as well as the legislative history of ASORA. Staff Counsel Doug Wooliver, representing the prime sponsor of the legislation, referred to registration of out-of-state offenders in his explanatory statements to two legislative committees. Wooliver listed the Alaska crimes that would be covered and added that crimes committed elsewhere would also be covered when the person convicted moved to Alaska:

> Mr. Wooliver explained the bill covered crimes of sexual assault in the first, second, and third degree; sexual abuse of a minor in the first, second, and third degree; promoting prostitution in the first degree; and incest and unlawful exploitation of a minor. He also explained the bill covered crimes not only committed in Alaska but those in other jurisdictions when those persons moved to Alaska.

Minutes, Sen. Judiciary Comm. Hearing on H.B. 69, 18th Leg., 1st Session, Tape 93-43, side A, no. 505 (Apr. 14, 1993). This clearly implies that those convicted in other jurisdictions of crimes like those listed for Alaska would also have to register. Wooliver made a similar statement to the Senate Finance Committee. *See* Minutes, Sen. Finance Comm. Hearing on H.B. 69, Tape SFC-93, #69, side 2, no. 225 (Apr. 28, 1993). I have seen no other reference to registration for out-of-state convictions in my review of ASORA's history.

[17] Op. at 9-10. New Mexico, which permits consulting court documents in individual cases, *see Hall*, 294 P.3d at 139-40, is among the jurisdictions the court cites

(continued...)

approach needlessly limits the number of foreign convictions that qualify as a sex offense and thus poorly serves the legislature's intent. As the Ohio Supreme Court has observed, such an approach "thwart[s] the legislature's intent because it would prevent [our] law from reaching some of the offenses identified by the [legislature] only because of idiosyncracies in the criminal codes of foreign jurisdictions."[18]

Although I have explained above how I think this case should be decided, and why, a number of additional comments seem appropriate.

## III.    COMMENTS ON THE DEPARTMENT'S APPROACH

The approach taken by the Department of Public Safety in this case cannot be justified. In deciding whether Doe II was required to register, the Department gathered investigative reports from California law enforcement authorities concerning Doe II's conduct. The Department decided that in light of the conduct shown in the reports and the elements of the California annoying or molesting statute, "the California offense as to which [Doe II was] convicted is similar to the Alaska offense of attempted sexual abuse of a minor in violation of AS 11.41.436(a)(2)." But the investigative reports on which the Department relied detailed a wide range of alleged misbehavior, only some of which might meet the elements of attempted sexual abuse of a minor as set out in this statutory subsection. The reports did not necessarily show what conduct Doe II was convicted of. The complaint to which he pled no contest was conclusory only, and did not detail any conduct. Moreover, in order to rely on the reports consistent with due process, the Department should have given Doe II notice and an opportunity to rebut them. This was not done, nor are there regulations that call for such a procedure.

---

[17](...continued)
in this discussion. Op. at 9-10.

[18]    *Lloyd*, 970 N.E.2d at 877.

Further, any suggestion that the Department must conduct a trial-like proceeding in order to determine what a defendant was convicted of seems implausible in light of the expense and inefficiency involved, yet that is what due process would require. And again, even if such an approach were taken, it would show, at best, only what a potential registrant did, not, as required by ASORA, what he was convicted of.

## IV.   IT IS NOT NECESSARY TO CHOOSE BETWEEN THE CATEGORICAL APPROACH AND THE APPROACH THAT PERMITS REFERENCE TO COURT DOCUMENTS.

It is not necessary to decide in this case whether the court's approach of reviewing only the statutory language or the two-step approach I have described should be adopted. All that needs to be said is that the statutes being compared are not similar under either approach that might be used. This has the advantage of deferring the decision as to which approach is preferable to a case in which the choice actually makes a difference.[19] Experience teaches that this would be desirable because the pros and cons of a rule announced based on hypothetical facts may well look different in a concrete setting.[20]

## V.   COMMENTS CONCERNING THE COURT'S OPINION

The opinion's rationale seems to be encapsulated in the following two sentences: "Because 'similar' modifies 'law of another jurisdiction,' based on the plain language of the statute it is the *law* that must be similar. We therefore 'employ a

---

[19]     I would join in an opinion so holding.

[20]     Our cases have frequently counseled against deciding questions in the abstract. See, for example, *State v. American Civil Liberties Union of Alaska*, 204 P.3d 364, 371-73 (Alaska 2009), and cases there cited. "Courts worry that unnecessary lawmaking should be avoided, both as a matter of defining the proper role of the judiciary in society and as a matter of reducing the risk that premature litigation will lead to ill-advised adjudication." *Id.* at 372 (quoting *Brause v. State, Dep't of Health & Soc. Servs.*, 21 P.3d 357, 359 (Alaska 2001)).

categorical approach by looking to the statute . . . of conviction, rather than to the specific facts underlying the crime' to determine whether that statute is similar to one of the pertinent Alaska sex offenses under AS 12.63.100(6)(C)."[21]

This rationale may be read as simply concluding that because "similar" modifies "law of another jurisdiction" we are necessarily limited to consulting only statutory terms because of the constraints of the English language. Or the rationale may be that there is something compelling about the line of cases from which the quoted language is taken that requires us to limit our inquiry to the statutory terms.

Taking the first possibility, the phrase "similar law" is broad enough to encompass two statutes having similar purposes that cover the same conduct in a particular case, even if one may cover conduct that the other does not in other situations. Of course, a narrower meaning is also possible. But one would expect an explanation for choosing the narrower meaning, especially when the legislature has indicated a preference for inclusivity and our case law has rejected application of a strict plain-meaning analysis.[22]

The second possible meaning — that the line of cases represented by the quote from *Esquivel-Quintana v. Sessions* is compelling in the context of ASORA — requires an examination of the case law.

---

[21]    Op. at 7 (alteration in original) (emphasis in original) (quoting *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562, 1568 (2017)).

[22]    *See, e.g.*, *Blas v. State, Dep't of Labor & Workforce Dev., Div. of Emp't Sec.*, 331 P.3d 363, 373-74 (Alaska 2014) (using "sliding scale" in statutory interpretation and considering legislative history to construe "knowingly" in unemployment compensation disqualification statute). In contrast, the U.S. Supreme Court does not consult legislative history to interpret statutes if it determines the statutory language is plain. *See, e.g.*, *Lamie v. U.S. Tr.*, 540 U.S. 526, 532-34 (2004).

*Esquivel-Quintana* involved a removal proceeding against a lawful permanent resident based on the government's contention that he had been convicted of "an aggravated felony," a term that explicitly included "sexual abuse of a minor," under the Immigration and Nationality Act (INA).[23] The petitioner had pleaded no contest to a California statutory rape offense criminalizing "unlawful sexual intercourse with a minor who [was] more than three years younger than the perpetrator."[24] The question was whether this offense fell within the meaning of "sexual abuse of a minor" under the INA.[25] As there is no explicit statutory definition of "sexual abuse of a minor" under the INA, the court used a "generic" definition — based on the rule in most states — that required the victim to be younger than 16.[26] Under the California statute the victim could have been as old as 17.[27] Applying the "categorical approach," which forbids the court from looking at the actual age of the victim and requires the court to evaluate whether "the least of the acts criminalized by the state statute falls" within a corresponding "generic federal definition" of the crime, the court concluded that a conviction under the California statute was not necessarily sexual abuse of a minor under the INA.[28]

---

[23]   137 S. Ct. at 1567.

[24]   *Id.* (quoting Cal. Penal Code § 261.5(c) (West 2014)).

[25]   *Id.*

[26]   *Id.* at 1569, 1571-72.

[27]   *Id.* at 1568.

[28]   *Id.* at 1568-72.

The court noted that the categorical approach it employed was set forth in *Taylor v. United States*,[29] an early example of a case interpreting the sentencing enhancement provisions of what is now called the Armed Career Criminal Act (ACCA), which increases the sentences of federal defendants who have three prior convictions "for a 'violent felony' " including "burglary, arson, or extortion."[30] Courts interpreting ACCA also use "generic" definitions to determine whether a state conviction qualifies as one of these crimes.[31] Consulting state court records to determine the nature of a given conviction is generally prohibited, except in cases where a statute is said to be "divisible," that is one that lists elements of the offense in the alternative.[32]

Neither the INA nor ACCA resembles ASORA in form, purpose, or effect. Further, the *Esquivel-Quintana* and *Taylor* line of cases does not purport to be expressing a constitutional principle that would be binding on state courts when interpreting SORAs. They are simply interpreting particular federal statutes. I do not think they provide an analogy that is useful to this case. The opinion of the court does not explain why the court believes they do.

The court may also be implying that, because the court of appeals compares statutory elements and not the underlying facts of an offense when applying the sentence-enhancing provisions of Alaska's presumptive sentencing law, this court should observe

---

[29]     *Id.* at 1568 (citing *Taylor v. United States*, 495 U.S. 575 (1990)).

[30]     *See Mathis v. United States*, 136 S. Ct. 2243, 2247-48 (2016) (quoting 18 U.S.C. § 924(e) (2012)).

[31]     *Taylor*, 495 U.S. at 598.

[32]     *See Descamps v. United States*, 570 U.S. 254, 257 (2013) (describing modified categorical approach and its application).

a similar limitation under ASORA.[33] But the presumptive sentencing law, like the INA and ACCA, is different from ASORA in form, purpose, and effect. Thus the approach taken by the court of appeals does not mean that the same approach is appropriate under ASORA.[34] Again, the opinion of the court has offered no explanation as to why it may

---

[33] Op. at 8.

[34] The Court of Appeals of New York addressed the question whether a strict approach taken under a law that served to increase sentences should be used when interpreting New York's SORA. *See North v. Bd. of Exam'rs of Sex Offenders of N.Y.*, 871 N.E.2d 1133 (N.Y. 2007). The court concluded that there was no persuasive analogy:

> We are unpersuaded that the Legislature intended that the SORA "essential elements" inquiry involve the same strict equivalency approach used in the criminal enhanced sentencing context.
>
> . . . .
>
> . . . Certainly words or phrases used in the same legislation or statutory scheme are commonly ascribed the same meaning. Here, however, the language on which petitioner relies appears in distinct legislation enacted in separate statutory schemes that fulfill different functions.
>
> As part of the penal system, enhanced sentencing statutes serve to extend the term of incarceration attending a criminal conviction. In contrast, SORA is not a penal statute and the registration requirement is not a criminal sentence. Rather than imposing punishment for a past crime, SORA is a remedial statute intended to prevent future crime; its aim is to "protect[] communities by notifying them of the presence of individuals who may present a danger and enhancing law enforcement authorities' ability to fight sex crimes." While application of a strict equivalency standard is understandable in the enhanced sentencing context where the length of a defendant's incarceration is to be determined, it may not be the optimal vehicle to effectuate SORA's remedial purposes.

(continued...)

be concluding that cases interpreting sentence-enhancing provisions should guide our interpretation of ASORA.

---

[34](...continued)
    The legislative history of SORA does not disclose any intent
    by lawmakers to import the test from the Penal Law.

*Id*. at 1137-38 (alteration in original) (citations omitted).